IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONETTE LUCIUS | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY | § | |

**PLAINTIFF'S COMPLAINT**

JONETTE LUCIUS, Plaintiff, files this Complaint asserting causes of action in law and equity for relief against Metropolitan Life Insurance Company, Defendant.

**I.
PARTIES**

1. Plaintiff Jonette Lucius is a resident citizen of Mont Belvieu, Texas.

2. Defendant, Metropolitan Life Insurance Company, ("MetLife"), is a domestic or foreign insurance company doing business in the state of Texas and can be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, or wherever it may be found.

**II.
JURISDICTION AND VENUE**

3. This action against MetLife arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendant maintains business activity in and is in this district.

1

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail.

## III.
## STATEMENT OF FACTS

6. Ms. Lucius was hired by Chevron Phillips Chemical Company, LP ("Chevron") in July 1989 to work as a plant process operator. She enrolled in Chevron's employee welfare benefit Plan that included benefits for long term disability (LTD). The Plan was part of Chevron's Group Insurance Policy issued by MetLife. It provided income protection if an employee was disabled as a result of injury or sickness. Ms. Lucius was an eligible employee.

7. Chevron was the Plan Sponsor and Plan Administrator.

8. MetLife was the Insurer of the Plan.

9. Ms. Lucius has dealt with mental illness for much of her life. In 1993, she began treatment with Dr. Khashi Bagri. Dr. Bagri diagnosed her with post traumatic stress disorder.

10. In 2003, Dr. Bagri prescribed antipsychotic medications to help address her paranoia and auditory hallucinations. After another psychotic episode in 2005, Dr. Bagri increased Ms. Lucius's prescription for antipsychotic medications.

11. By May 2014, Ms. Lucius stopped working in May 2014 and applied for LTD benefits. MetLife approved the claim on February 19, 2015.

12. The MetLife Policy defined disability for the first 24 months as being unable to work "at your own occupation from any employer in your local economy". This is often known as "own occupation" disability. After 24 months, disability was defined as being unable to work "at any gainful occupation for which you are reasonably qualified taking into account your education, training, and experience". This is often known as "any occupation" disability.

13. The Policy also contained a 24 month limited pay period for a disability due to mental or nervous disorders.

14. The limited pay period also contained an exception to the limitation. Specifically, the Policy's exception noted that the 24 month limitation to mental or nervous disorders would not apply if the disability resulted from Schizophrenia.

15. When MetLife approved Ms. Lucius's claim, MetLife employee Phillip Brown noted that her condition was considered a limited benefit condition "unless certain medical conditions arise in the future that are an exclusion to the LDB provision".

16. In February 2015, Dr. Bagri prescribed Quetiapine, yet another antipsychotic mediation. Ms. Lucius has taken that medication continuously since 2015.

17. In 2015, Ms. Lucius was approved for Social Security Disability benefits. She notified MetLife and promptly reimbursed it for the overpayment on her claim.

18. In March 2016, MetLife employee Phillip Brown and Ms. Lucius had a telephone conference in which she explained that any improvement had been minimal. She still had trouble focusing and forgetting deadlines, like when to pay bills.

19. In June 2016, MetLife advised Ms. Lucius that the definition of disability would change from "own occupation" to "any occupation" after February 2017.

20. In December 2016, Dr. Anjali Pinjala diagnosed Ms. Lucius with Schizophrenia.

21. On January 10, 2017, MetLife employee Jennifer Cady noted that Ms. Lucius suffered from multiple disc protrusions, facet arthropathy, and spondylosis with radiculopathy. An EMG nerve test was abnormal, particularly at the C5-C6 level.

22. Two days later, MetLife terminated Ms. Lucius's disability claim. In doing so, it concluded that she was disabled by bipolar disorder, PTSD, and depression. It thus concluded that the Policy's 24 month limited pay provision applied.

23. In February 2017, MetLife advised Ms. Lucius that it was reviewing her LTD claim for ongoing eligibility due to Schizo-Affective Disorder as a disabling condition.

24. As MetLife continued to review Ms. Lucius's claim, it retained a Marcus Goldman to review some of her medical records.

25. On March 8, 2017, Dr. Goldman held a telephone conference with Dr. Bagri. In the conversation, Dr. Goldman admitted that he had not reviewed any of Ms. Lucius's medical records. Dr. Bagri advised that Ms. Lucius's condition was the worst that he had ever seen. Because she did not respond to mood stabilizers, only antipsychotic medications, Dr. Bagri diagnosed Ms. Lucius with Schizophrenia.

26. On March 15, 2017, Dr. Goldman prepared a medical record review in which he stated that although Ms. Lucius met the criteria for Schizophrenia, it could be ruled out as a diagnosis because of her mood symptoms.

27. On March 31, 2017, Dr. Goldman amended his report yet again, this time to indicate that the evidence he reviewed established a diagnosis of Schizo-Affective Disorder. He was so confident in his diagnosis that he rejected the need for any psychological testing at all.

28. On May 3, 2018, Dr. Jason Mensah performed a psychiatric evaluation of Ms. Lucius. Dr. Mensah concluded that she met the criteria for Schizophrenia.

29. MetLife terminated Ms. Lucius's LTD claim on June 20, 2017.

30. On July 14, 2017, Dr. Goldman again amended his medical record review. After an "exhaustive review of all medical records", he refused to change his opinion.

31. A week later, Chevron Senior Benefits Specialist Myke Capps emailed MetLife employee Jennifer Cady and expressed her concern that Dr. Goldman had only tried to contact Dr. Mensah one time. Ms. Capps noted that it "doesn't feel like much of an effort when benefits are ending". She also expressed her concern that MetLife refused to provide Ms. Lucius with a copy of the DSM-V guidelines upon which it claimed to rely in denying her claim.

32. On July 24, 2017, Dr. Pinjala advised MetLife that she stressed that, in her professional opinion, Ms. Lucius met the definition of Schizophrenia. She also noted that the diagnosis was shared by all of her mental health providers.

33. The next day, Dr. Goldman held a telephone conference with Dr. Mensah. Dr. Mensah explained that Ms. Lucius's symptoms did not meet the threshold for Schizo-Affective Disorder. This was not enough for Dr. Goldman, an employee MetLife paid to review medical records. This time, he called Ms. Lucius a malingerer and liar because "she was aware of the administrative issue" and "has a vested interest in presenting in a way that would best serve her interests". He did not mention how disparaging Ms. Lucius would best serve his employer's interests.

34. Ms. Lucius submitted her appeal in August 2017. Along with her appeal, she submitted the July 24, 2017 letter from Dr. Pinjala, along with an August 7, 2017

5

letter from Dr. Mensah in which he stated that he disagreed with Dr. Goldman's diagnosis and would refer Ms. Lucius for additional psychological testing.

35. A week later, the information regarding Ms. Lucius's claim and appeal reached Oliver Hunt, a high-ranking account executive at MetLife. His panic bubbled over in an August 8, 2017 email to Jennifer Cady, the senior claims specialist assigned to Ms. Lucius's claim. Mr. Hunt stated that MetLife needed to "escalate" the claim "in case we get hit with a letter by a lawyer". He then claimed that the insurance broker wanted to make sure "all hands are on deck before we get slammed by an attorney". Mr. Hunt did not ask Ms. Cady or anyone else reviewing Ms. Lucius's claim to look out for her best interests.

36. In January 2018, Ms. Lucius sent additional evidence that supported her claim. She detailed her concern that Dr. Goldman's July 2017 report was so hostile it might have been intended for another claim. She also provided evidence that MetLife was paying other the LTD claims of Chevron Phillips employees without a 24 month limitation on the claim.

37. In lieu of a substantive response, MetLife denied Ms. Lucius's appeal in May 2018.

38. In denying the appeal, MetLife relied on the medical record review of a Dr. Stacy Woods. Dr. Woods holds herself out as a psychiatrist practicing in Rockville, MD. She is not licensed to practice medicine in Texas. There is no record that she has staff privileges at any hospitals, sees patients, teaches, researches, or actually practices medicine. Her review of the medical records was incomplete, at best. Dr. Woods apparently did not review anything after the January 30, 2017 letter from Dr. Bagri. She did not substantively respond to the May 2017 Psychiatric

Evaluation or July 25, 2017 letter from Dr. Pinjala. She spoke with Dr. Pinjala on April 17, 2018. Dr. Pinjala told Dr. Woods that Ms. Lucius was very paranoid, presented with flat affect, and suffered from Schizophrenia. Dr. Woods totally ignored Dr. Pinjala's input.

39. MetLife's use of these medical record reviewers, among others, reveals its underlying motive to terminate Ms. Lucius's claim, no matter the evidence. In order to deny the appeal, MetLife had to repeatedly ignore Ms. Lucius's medical providers, who provided evidence that she suffered from paranoid delusions. MetLife also improperly weighed parts of the medical records that supported its conclusions. On information and belief, MetLife selected these medical record reviewers to review Ms. Lucius's claim for that very purpose. This pattern of conduct evidences a biased approach and treatment of MetLife's disability claims, including this one.

40. On February 19, 2019, Ms. Lucius submitted additional evidence in support of her claim. Among other things, she provided evidence relating to MetLife's use of biased and unqualified medical record reviewers and additional evidence documenting her disability. The additional evidence was provided pursuant to Fifth Circuit case authority that obligated MetLife to review the additional information. ("The administrative record consists of relevant information made available to the administrator prior to the . . . filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it".) *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of*

*Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018). She requested that MetLife review those records pursuant to its legal obligation and re-evaluate her claim.

41. The evidence that Ms. Lucius sent in February 2019 was submitted before filing this lawsuit and in a manner that gave MetLife a fair opportunity to consider it.

42. Instead, on March 14, 2019, Lindsey Emery of MetLife advised Ms. Lucius that it would not change its opinion because she had "exhausted all administrative levels of appeals". Ms. Emery did not indicate that the documents would be added to the claim file.

43. Having exhausted her administrative remedies, Jonette Lucius brings this action to recover the LTD benefits promised in the Plan and Policy.

## IV.
## CLAIMS & CAUSES OF ACTION

44. The Chevron Phillips Chemical Company LP Health & Welfare Benefit Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq.* Chevron Phillips is the plan sponsor and Plan Administrator. MetLife is the insurer and Claim Administrator.

45. As Plan fiduciaries, MetLife and the Plan are obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. They are also obligated as fiduciaries to conduct their investigation of a claim in a fair, objective and evenhanded manner.

46. MetLife's adjustment of the Lucius claim was instead biased and outcome oriented. This was partly reflected by its denial of the Lucius claim, even after being presented with evidence of her disability. It was also reflected in MetLife's

        unreasonable reliance on reviewers who lacked the training, education, and experience to objectively or competently review his claim.

47. MetLife's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

48. MetLife's interpretation of the Plan and Plan language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which MetLife based its denial decision was ambiguous. The ambiguous nature of those terms requires those terms be construed against MetLife and the Plan and in favor of coverage for Lucius.

49. MetLife's denial was made without substantial supporting evidence. Its decision to terminate the Lucius claim was instead based upon rank speculation and guesswork. MetLife's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

50. At all material times, MetLife acted on behalf of the Plan and in its own capacity as the Insurer and as Claims Administrator.

51. MetLife's termination of the Lucius claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1), entitling Lucius to the LTD policy benefits to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Ms. Lucius now sues.

## V.
## STANDARD OF REVIEW

52. The default standard of review for denial of a benefit claim is *de novo.* Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

53. The Plan or Policy may contain a discretionary clause or language MetLife may contend affords it discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. MetLife's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

54. If discretion applies, the Court should afford MetLife less deference in light of its financial conflict of interest. MetLife's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Lucius's claim and as the potential payor of that claim.

55. MetLife's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. MetLife's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

56. Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other MetLife policyholders and claimants.

57. In light of its financial conflict, MetLife should be given little or no discretion in its claims decision.

58. Alternatively, the standard of review of this claim should be *de novo,* affording MetLife no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are

reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

59. The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of the Lucius claim and MetLife's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo.*

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

60. Lucius requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

61. The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Lucius thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

62. Lucius seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## **PRAYER**

Jonette Lucius, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendant Metropolitan Life Insurance Company, and issue judgment against it as follows:

A. Pay to Ms. Lucius all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B. Pay all reasonable attorney's fees incurred and to be incurred by Ms. Lucius in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C. All such other relief, whether at law or in equity, to which Ms. Lucius may show herself justly entitled.

Respectfully submitted,

By:_____
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF